**FARM CREDIT BANK, Appellant,**

v.

**Harold Richmond HURD and Dorothy Frizzell Hurd, Appellees.**

No. 89–1091.

United States District Court, W.D. Tennessee, E.D:

Oct. 10, 1989.

Harvey Boswell, Milan, Tex., for Farm Credit Bank.

R. Bradley Sigler, Jackson, Tex., for Harold Richmond Hurd and Dorothy Frizzell Hurd.

## ORDER REVERSING DECISION OF BANKRUPTCY COURT

TODD, District Judge.

This matter is an appeal from the United States Bankruptcy Court for the Western District of Tennessee by Farm Credit Bank. In the decision below, the bankruptcy court denied the Chapter 12 trustee's "Motion to Require Debtor [To] Pay Over Disposable Income." For the reasons set forth below, the decision of the bankruptcy court is reversed.

On January 23, 1989, the Chapter 12 trustee filed a motion seeking an order of the bankruptcy court requiring Debtors, Harold and Dorothy Hurd, to turn over to the trustee certain "disposable income" with a value of $26,841.59. This disposable income existed in the form of $2,841.59 in cash and stored crops, specifically 3,000 bushels of soybeans, valued by Debtors at $24,000.00.

Hearings on the trustee's motion were held on February 16, 1989, and March 2, 1989. At the conclusion of the latter hearing, the bankruptcy court denied the trustee's motion, relying upon 11 U.S.C. § 1225(b)(2) and *In re Coffman*, 90 B.R. 878 (Bankr.W.D.Tenn.1988). It is from this ruling that creditor Farm Credit Bank appeals.

## FACTUAL FINDINGS

On December 1, 1986, Debtors, Harold and Dorothy Hurd, filed their voluntary petition for relief under Chapter 12 of the Bankruptcy Code, 11 U.S.C. §§ 1201–1231 (West.Supp.1989). On February 25, 1987, Debtors filed a proposed plan of reorganization. The plan provided that a yearly payment percentage on unsecured claims would be determined by the trustee.

As filed, Debtors' "Annual Report of Income and Expenses" for the crop year 1988, reflects "net income" of $2,841.59.

No portion of this "net income" was submitted to the trustee for disbursement to unsecured creditors. Rather, according to Mr. Hurd, the net funds were expended by Debtors for nominal operating expenses between the December 31, 1988, year-end reporting date and the hearing date of February 16, 1988.

The "Comparative Statement of Farm Assets" reflects 3,000 bushels of beans with a value of $24,000 on hand at year-end which were not on hand at the beginning of the year. It appears from the record (Transcript of Hearing on the Trustee's Motion) that 675 of the 3,000 bushels were sold by Debtors and the proceeds were used to pay operating expenses. Of the remainder, Debtors contend that 2,000 bushels must be retained for seed for the 1989 crop.

The trustee, in filing his original "Motion to Require Debtor [To] Pay Over Disposable Income," contends that a total amount of $26,841.59—"net income" of $2,841.59 as well as $24,000.00 in beans—is "disposable income." As such, the trustee contends that this amount should be submitted to him for distribution in accordance with 11 U.S.C. § 1225(b)(2). Debtors do not actually dispute these amounts, but it is Debtors' position that these funds and beans are necessary for the production of maintenance of the current crop and, therefore, do not constitute "disposable income" within the meaning of § 1225(b)(2).

## DISCUSSION

■ If the Chapter 12 trustee or any unsecured creditor objects to the debtor's plan of reorganization, the plan may not be confirmed unless it provides that all the debtor's projected disposable income to be received during the term of the plan will be applied to making payments under the plan. 11 U.S.C. § 1225(b)(1)(B). Otherwise, the Code simply requires, with regard to holders of allowed unsecured claims, that the unsecured creditor receive at least as much on account of its claim as it would if the case were one under Chapter 7 liquidation. 11 U.S.C. § 1225(a)(4).

■ The determination of what constitutes "disposable income" within the meaning of § 1225(b)(2) must be made on a case by case basis. *Coffman*, 90 B.R. at 885. Section 1225(b)(2) defines "disposable income" as "income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor; or

(B) for the payment of expenditures necessary for the continuation, preservation, and operation of the debtor's business."

In the instant case, Debtors contend that the $26,841.59 amount is not disposable income because, according to § 1225(b)(2), it is "necessary for the continuation, preservation, and operation of the debtor's business." Debtors assert that the $2,841.59 in cash was necessary for payment of expenditures for ongoing farm operations and the $24,000.00 in beans was necessary for operation of the farm, to plant the 1989 crops.

■ The proper response from a debtor who disagrees with the trustee's determination of disposable income is to file a motion under § 1229(a)(1). According to the court in *In the Matter of Schwarz*, 85 B.R. 829 (Bankr.S.D.Iowa 1988), after the trustee reviews the year-end disclosure statements and recommends a specific amount as disposable income, the debtor or any creditor disputing the amount may challenge the distribution pursuant to § 1229(a)(1).

Other bankruptcy courts, including the Bankruptcy Court for the Western District of Tennessee, have followed the procedure established in *Schwarz*. *In re Coffman*, 90 B.R. 878 (Bankr.W.D.Tenn.1988); *In re Rott*, 94 B.R. 163 (Bankr.D.N.D.1988). In *Coffman*, Judge Brown concluded that the *Schwarz* approach was "clearly in line with the language of Section 1225(b) and the policies underlying Chapter 12 and protects the interests of all affected parties." *Coffman*, 90 B.R. at 885.

This court hereby adopts the procedure established in *Schwarz* whereby a debtor or any unsecured creditor who disagrees with the finding of the Chapter 12 trustee must file a motion pursuant to § 1229(a)(1). Specifically, this court adopts the following procedure:

(1) The amount of disposable income should initially be calculated by the Chapter 12 standing trustee who, mindful that the unsecured creditors must be paid at least as much as they would receive under Chapter 7 liquidation, should review the debtor's financial records, determine what amounts are reasonably necessary for the maintenance and continuation of the debtor's business, and recommend a specific amount for distribution to the unsecured creditors.

(2) If the debtor or any unsecured creditor disagrees with the amount recommended by the trustee, they may challenge the distribution, or lack thereof, under § 1229(a)(1) of the Bankruptcy Code.

*Coffman*, 90 B.R. at 885; *Rott*, 94 B.R. at 167; *Schwarz*, 85 B.R. at 832.

■ This procedure was not followed by the bankruptcy court below. Although the Chapter 12 trustee calculated the amount of disposable income, the bankruptcy court denied the trustee's motion before the debtor or any unsecured creditor had an opportunity to object and file a motion pursuant to § 1229(a)(1).

It is the procedure followed by the bankruptcy court, not necessarily the resulting decision itself, that requires reversal. Accordingly, the decision of the bankruptcy court is reversed and this action is REMANDED to the bankruptcy court with instructions to apply the procedure described above.

IT IS SO ORDERED.